FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

2019 OCT -1 PH 1: 16

JEFFREY P. COLWELL
CLERK

**19 - CV - 02806**

Civil Action No. _____     BY_____DEP. CLK

(To be supplied by the court)

**Meleaha R. Glapion-Pressley,** Plaintiff

v.

**City and County Denver** *et al,*

Michael Hancock; Bruce Plotkin; Katheryn Smith; Amy Packer; Sherri Catalano; Don Mares;

Joel Homar; Mimi Scheuermann; Tammy Davis; Josie Berry; Rebecca Ball; Erin Hall; Irene

VanCleave; Kathryn Hodson,     **Defendants.**

---

## EMPLOYMENT DISCRIMINATION COMPLAINT

---

### A. PLAINTIFF INFORMATION

**1.)** Meleaha R. Glapion- Pressley ("Glapion") is an individual and a resident of Colorado;

whose mailing address is #21025 E. 49th Avenue, Denver, CO 80249; her phone number is

(303) 990-4155 with an email address of prosepursuit@gmail.com.

### B. DEFENDANTS INFORMATION

**2.)** **City and County of Denver** ("City") is a municipality/county duly constituted under the

laws of Colorado, with its principal offices located at the City and County Building

#1437 Bannock St., Denver, CO 80202

**3.)** **Michael Hancock** ("Hancock") is an individual and a resident of Colorado, and, at all times relevant to this complaint, was the Mayor of the City of Denver, whose office is located at #1437 Bannock St., #350, Denver, CO 80202; phone number is 720-865-9000 and email is Michael.Hancock@denvergov.org.  Hancock is sued in his official capacity.

**4.)** **Bruce Plotkin** ("Plotkin") is an individual and a resident of Colorado, and at all times relevant to this complaint, was the hearing officer for the Career Service Board over Plaintiff's three consolidated direct appeals, whose office is located at #201 W. Colfax Avenue, Dept. 412 (First Floor), Denver, CO 80202; phone number is 720-913-5703 and known email CSAHearings@denvergov.org. Plotkin is sued in his individual and official capacities.

**5.)** **Katheryn Smith** Registration #29514 ("Smith") is an individual and a resident of Colorado, and at all times relevant to this complaint, was Director, Human Services Legal Section, Denver City Attorney's Office; whose office is located at #1200 Federal Blvd., 4th Floor, Denver, CO 80204; phone number is (720) 944-2978 and email Kathryn.smith@denvergov.org. Smith is sued in her official capacity.

**6.)** **Amy Packer** Registration #33116 is an individual and a resident of Colorado, and at all times relevant to this complaint, was the Assistant City Attorney for Agency (DDHS), attended and provided legal advisory for October 30, 2018 Contemplation of Discipline Meeting; whose office is located at #1200 Federal Blvd., 4th Floor, Denver, CO 80204. Packer is sued in her official capacity.

**7.)** **Sherri Catalano** Registration #39773 ("Catalano") is an individual and a resident of Colorado, and at all times relevant to this complaint, was the Assistant City Attorney for Agency (DDHS), attended and provided legal advisory for December 4, 2018

2

Contemplation of Discipline Meeting; whose office is located at #1200 Federal Blvd., 4th

Floor, Denver, CO 80204; phone number is 720.944.2982 and email

sherri.catalano@denvergov.org. Catalano is sued in her individual and official capacities.

**8.) Don Mares** ("Mares") is an individual and a resident of Colorado, and at all times

relevant to this complaint, was Denver Human Services Executive Director; whose office

is located at #1200 Federal Blvd. 4th Fl., Denver, CO 80204. Don.Mares@denvergov.org.

Mares is sued in his official capacity.

**9.) Joel Homlar** ("Homlar") is an individual and a resident of Colorado, and at all times

relevant to this complaint, was Denver Human Services Deputy Executive Director;

whose office is located at #1200 Federal Blvd., 4th Fl., Denver, CO 80204.

Joel.Homlar@denvergov.org. Homlar is sued in his official capacity.

**10.)     Mimi Scheuermann** ("Scheuermann") is an individual and resident of

Colorado, and at all times relevant to this complaint, was Denver Human Services

Division Director Child Welfare; whose office is located at #1200 Federal Blvd., Denver,

CO 80204; known email is Mimi.Scheuermann@denvergov.org. Scheuermann is sued in

her individual and official capacities.

**11.)     Tammy Davis** ("Davis") is an individual and resident of Colorado, and at all

times relevant to this complaint, was Denver Human Services Senior Human Resources

Business Partner; whose office is located at #1200 Federal Blvd., Denver, CO 80204;

phone number is (720) 944-1236, and email is Tammy.Davis@denvergov.org. Davis is

sued in her individual and official capacities.

**12.)     Josie Berry** ("Berry") is an individual and resident of Colorado, and at all times

relevant to this complaint, was Denver Human Services Deputy Division Director Child

Welfare; whose office is located at #1200 Federal Blvd., Denver, CO 80204; known email is Josie.Berry@denvergov.org . Berry is sued in her individual and official capacities.

**13.)**     **Rebecca Ball** ("Ball") is an individual and resident of Colorado, and at all times relevant to this complaint, was Denver Human Services Administrator II, Child Welfare; whose office is located at #1200 Federal Blvd., Denver, CO 80204; known email is Rebecca.Ball@denvergov.org . Ball is sued in her individual and official capacities.

**14.)**     **Erin Hall** ("Hall") is an individual and resident of Colorado, and at all times relevant to this complaint, was Denver Human Services Afterhours On-Call/ Placement Services Administrator; ; whose office is located at #1200 Federal Blvd., Denver, CO 80204; known email is Erin.Hall@denvergov.org. Hall is sued in her individual and official capacities.

**15.)**     **Irene VanCleave** ("VanCleave") is an individual and resident of Colorado, and at all times relevant to this complaint, was Denver Human Services Emergency Response Team Lead Social Caseworker; whose office is located at #2929 W. 10th Ave. Denver, CO 80204 and/or #1200 Federal Blvd. Denver, CO 80204; known email is Irene.VanCleave@denvergov.org. VanCleave is sued in her individual and official capacities.

**16.)**     **Kathryn Hodson** ("Hodson" f/a Gleason) is an individual and resident of Colorado, and at all times relevant to this complaint, was Denver Human Services Emergency Response Team Social Caseworker Supervisor; whose office is located at #2929 W. 10th Ave. Denver, CO 80204 and/or #1200 Federal Blvd. Denver, CO 80204; known email is Kathryn.Hodson@denvergov.org. Hodson is sued in her individual and

official capacities.

## C.  JURISDICTION

**17.)**          Jurisdiction is asserted pursuant to Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. §§ 2000e, *et seq*. (employment discrimination on the basis of race,

color, religion, sex, or national origin). Analogous to Rule 8 of the Federal Civil Rules of

Civil Procedure (a)(1), in a short and plain statement, the Plaintiff asserts that venue for

this action properly lies in the District of Colorado pursuant to 28 U.S.C. §1391(b). The

Court has original jurisdiction over the subject matter of these claims also pursuant to 5

U.S.C. §551; 42 U.S.C. §1983; 29 U.S.C. §201; and 28 U.S.C. §1331.  Jurisdiction of

this Court is invoked to secure protection and redress deprivation of rights guaranteed by

federal law, which rights provide for injunctive relief and other relief for illegal

·employment discrimination.

## D.   STATEMENT OF CLAIMS

**18.)**          **The conduct complained of in this complaint involves the following:**

     X     different terms and conditions of employment

     X     failure to promote

     X     termination of employment

     X     retaliation

     X     other: Failure to remove barriers; involuntary administrative leaves; discipline and

adverse actions…

**19.)**         **Defendant's conduct was discriminatory because it was based on the**

**following:**

     X     race [Black American]

__X__ religion [Christian]

__X__ national origin/ancestry [Creole, Santo Domingo, Dominican Republic (**Latin America**)]

__X__ pregnancy

__X__ color [black; light skin complexion]

__X__ sex [female born; sexual orientation: heterosexual; gender Identity: female]

__X__ marital status [married 4/12/2017]

**CLAIM ONE:**         **CONTINUOUS DISCRIMINATION**

**20.)**        Plaintiff alleges her first claim for relief herein by supporting facts/paragraphs below. Plaintiff re-alleges ALL other claims/supporting facts paragraphs of herein Complaint at Law AND filed formal complaint charges of discrimination [#541-2019-02097] against Defendants with the Equal Employment Opportunity Commission (Attachment #1).

**SUPPORTING FACTS:**

**_BACKGROUND_**

**21.)**        Plaintiff alleges that she was subjected to CONTINUOUS DISCRIMINATION while employed as a Social Caseworker on the Emergency Response Team (ERT) at Denver Human Services from April 25, 2016 AND AFTER being wrongfully terminated December 7, 2018.

**22.)**        Plaintiff alleges that no other comparator was of her protected groups; as she was the ONLY MARRIED, Black American (light skin), female, whose national origin/ancestry is New Orleans, Louisiana (NOLA) Creole, Santo Domingo, Dominican Republic (**Latin** America) — on the Emergency Response Team (ERT) at Denver Human

Services during her employment.

**23.)**    Plaintiff's former position title and salary within DHS was Social Caseworker,

earning monthly salary of $4,791.66 (excluding Afterhours pay to be analogous to the

City and County of Denver's Career Service Rule §9-62 Protected Service Stipend

{Issued 1/11/2016}).

**24.)**    Plaintiff's former program area and division of former position within DHS was

Emergency Response Team (ERT) within the Child Welfare Division of Denver

Department of Human Services.

**25.)**    Plaintiff alleged unlawful employment practices took place at the following

location: Denver Department of Human Services, 1200 Federal Blvd., Denver, CO 80204

AND Family Crisis Center (FCC) 2929 W. 10th Ave. Denver, Colorado 80204.

**26.)**    Agency, Denver Human Services ("DHS") —is an employer within the meaning

of Title VII. Agency has over 1200 employees; 355 in Child Welfare Division.

## PREGNANCY DISCRIMINATION

**27.)**    Discriminative and retaliatory, Plaintiff was treated unfavorably because of

childbirth (2/2/2018) WHEN Defendant Hodson targeted and assigned Plaintiff her first

fatality on July 18, 2018, for a BLACK two year old, within two months of Plaintiff's

return from FMLA.

**28.)**    Plaintiff interviewed for Emergency Response Team (ERT) Lead Caseworker

pregnant.

**29.)**    Plaintiff invoked earned paid time off (PTO) but was scrutinized by Defendant

Hodson for dates/times Plaintiff had prenatal and postnatal appointments.

**30.)**      Plaintiff was granted only two weeks by Defendant Hodson to secure night-care for newborn post FMLA.

**31.)**      Defendant Hodson took issue with Plaintiff not vocalizing and sharing her personal business; including intimacy of her pregnancy.

**32.)**      Defendant Hodson embarrassed Plaintiff with unwelcomed/inappropriate commentary directly in relation to Plaintiff's pregnancy at ERT staff meeting; wherein former ERT staff Shiree Edwards and Angela Myers were/are witnesses of Defendant Hodson stating to Plaintiff— *"Did you not tell anyone about your pregnancy because you had a miscarriage or a stillborn?"*

## MARITIAL STATUS

**33.)**      Plaintiff was married, April 12, 2017— wedding date on Holy Wednesday; certificate from the City and County of Denver.

**34.)**      Defendant Hodson took issue with Plaintiff not sharing her personal business; including her marriage and wedding.

**35.)**      Defendant Hodson interrogated Plaintiff about her husband's last name.

**36.)**      Plaintiff's MARITAL claims for all three consolidated appeals were ERRONEOUSLY dismissed by Career Service Hearing Officer Plotkin AND Plaintiff exhausted administrative hearing requests and moved under C.R.E. 201 for review of the record supportive of marital claims being timely and supported [e.g. Petitioner's opening and closing testimony; and denied exhibit Z at 700-715] — pursuant to Career Service Rule (CSR) §19-50.

37.)      Manifest abuse of discretion Plotkin errored— by disallowing Plaintiff full and

fair opportunity to litigate her MARITAL discrimination claim; and abused his discretion

dissecting/disallowing relevant evidence AND restricting/limiting testimony.

**38.)      PLAINTIFF WAS THE ONLY BLACK AMERICAN MARRIED FEMALE**

**ON DENVER HUMAN SERVICES (DHS) SOCIAL CASEWORKER ON THE**

**EMERGENCY RESPONSE TEAM (ERT) AND WAS TREATED WORSE THEN**

**ALL DDHS CW ERT STAFF. _Infra._**

**DIFFERENTIAL TREATMENT**

39.)      Plaintiff's terms/conditions and privileges of employment weren't equal;

including:

   **a.** Paid Time Off (PTO)

   **b.** Sick leave

   **c.** Vacations/Holidays

   **d.** Tardiness

   **e.** Trainings

40.)      Plaintiff was involuntary assigned "mentor" by Defendant Hodson without

Hodson having conducted proper methodology or personnel record review.

41.)      Defendant Hodson wrongfully and intentionally excluded ONLY Plaintiff from

attending July 19, 2018 "5280 Award Celebration" hosted by Defendant Mares.

Defendant Homlar texted Hodson; asking why she (Hodson) wasn't present for the "5280

Award Celebration" and Hodson told Plaintiff and ERT staff that she text replied to

Homlar — "*because she (Hodson) wasn't invited.*" Mares, Homlar, Hodson, and ERT

staff knew that Plaintiff was wrongfully and intentionally excluded from "5280 Award Celebration".

**42.)**   Defendant Hodson was given accommodations by Defendant Berry and Agency for "her little ones' at home"; but equal accommodation (including work scheduling) was NOT afforded to Plaintiff for her newborn who had medical conditions.

**43.)**   Defenant Berry testified before the Career Service Hearing to NOT affording equal accommodation for others' children (e.g. Sherron Glapion- Plaintiff's Case-In-Chief; NOT of Plaintiff's protected groups (divorced, Black (dark skin) NOT of Latin ancestry) during Career Service Hearing.

**44.)**   Defendant VanCleave committed time fraud; including by not attending Intake Training on October 23, 2018. VanCleave was NOT disciplined; whereas the October 23, 2018 Intake Training was an incident included/upheld in Plaintiff's December 7, 2018 dismissal.

**45.)**   Plaintiff was on approved sick PTO October 22, 2018 and notified Hodson of inability to attend October 23, 2018 Intake Training (which was NOT mandatory); yet ONLY Plaintiff was disciplined for NOT attending 10/23/18 Intake Training; and NO ONE FROM ERT attended as evidenced by Sign-In Sheets Plaintiff obtained for Career Service discovery.

**46.)**   Defendant VanCleave was allegedly "sick" SEVERAL dates; used alleged "PTO" (time fraud); had vacations approved; tardiness; AND Dawn Landrum (NOT of Plaintiff's protected groups— Landrum is NOT married and identifies as "African-American/Multi-Racial") was allegedly "sick" and called out SEVERAL dates; tardy; was approved vacations/holidays in ADVANCE; and used alleged "PTO" (time fraud)

10

per Defendant Hodson's approval...WHEREAS Plaintiff's very few sick days were onset by harassment/hostile work environment or for newborn's medical needs; but Plaintiff was strictly scrutinized; denied July 24, 2018 PTO and Flex; for any invoked earned Paid Time Off (PTO) for sick or vacation which Plaintiff provided Defendant Hodson earliest reasonable notice of.

## RELIGION

**47.)**    Defendant Hodson chastised and harassed Plaintiff about not wanting to publically share her personal business; including her date of birth. Plaintiff's reasons for not sharing her date of birth conflicted with her spiritual beliefs/practices.

**48.)**    Defendant VanCleave yelled at Plaintiff that "*she ruined Christmas!*" WHEN Plaintiff politely declined participating in holiday festivity. Plaintiff's declination to participate in holiday festivity conflicted with her spiritual beliefs/practices.

**49.)**    Plaintiff made it known to Defendant's (Hodson; VanCleave, Ball, Berry, Davis, Catalano, Plotkin) that she was a believer and follower of Jesus Christ; including in Contemplation of Disciplinary Meetings (10/30/18 AND 12/04/18) AND Career Service Authority Hearings (May 7, 2019).

**50.)**    Plaintiff believes she was targeted/persecuted because of vocalizing her spiritual beliefs.

## PAY DISPARITY

**51.)**    Plaintiff received less than WHITE females (Defendant VanCleave; Theresa Harris; Defendant Hodson) on ERT; but Plaintiff possessed higher education; tenure; related and higher work experiences.

**52.)** Plaintiff opposed not only the discrimination that was being visited upon her, but also during Career Service Hearings discriminative practices by Denver Human Services against others' including Hodson receiving more pay then Plaintiff's Case-In-Chief protected witness, Sherron Glapion, DESPITE Sherron Glapion having longer DHS Child Welfare tenure (over 10 years); higher education (credits towards Master in Business Administration); and related higher work experiences.

## NON-SELECTION/PROMOTION

**53.)** Plaintiff applied TWICE for DDHS ERT Lead Caseworker position and discriminatively was NOT selected/promoted.

**54.)** All THREE DDHS ERT Lead Caseworkers who were selected [Rob Csencis, Angela Meyers, and Defendant VanCleave] had lower education and work experiences then Plaintiff, and were WHITE, divorced or not married.

**55.)** Defendant Ball was the "Hiring Manager" who purposely arranged ERT Lead Caseworker interviews to be held while Plaintiff was out on approve PTO leave.

**56.)** Plaintiff and former ERT Social Caseworker Edwards were told by former ERT Lead Caseworker Angela Meyers that Defendant Ball— *"Begged her (Meyers) to take the position of ERT Lead Caseworker and that no one else had applied."*

**57.)** Former ERT Social Caseworker Edwards WITH ERT Social Caseworker Harris — *"Felt that another candidate was far more qualified; and expressed strong supported reserves about Defendant VanCleave to Defendant Hodson...but Defendant Hodson chose Defendant VanCleave to avoid time-consuming training."* See point #18 of Edwards Notarized Affidavit; as was also testified by Edwards during Career Service Hearings.

## TANGIBLE EMPLOYMENT ACTIONS[1]

### *Reassignment of Duties:*

**58.)**     Plaintiff was designated to be a Call Taker and menial duties by Defendant Hodson.

**59.)**     Plaintiff was wrongfully disallowed to respond as a Social Caseworker (e.g. *"Appellant was removed from the field"*[2] by Defendants Hodson, Ball, Berry.

**60.)**     Plaintiff was wrongfully disallowed performing Career Service Rule (CSR) §9-62 Protected Service Stipend "Afterhours" Responder duties;

**61.)**     Plaintiff was wrongfully disallowed performing CSR §9-62 Protected Service Stipend "Afterhours" duties with DHS Child Welfare Intake Supervisor Sherron Glapion per false allegations of nepotism by Defendants' Hodson AND Ball.

**62.)**     July 24, 2018 4:30 PM reassignment of BC fatality case to white/divorced Defendant VanCleave by Defendants' Hodson, Berry, Scheuermann.

## TARNISHMENT OF REPUTATION

**63.)**     Defendant VanCleave's hearsay false allegations to Defendant Hodson about Plaintiff included in upheld adverse actions issued to Plaintiff.

**64.)**     Defendant Hodson's August 16, 2018 6:19 PM "after hours assignments" subject email to all DHS Child Welfare Supervisors, Administrators (including Defendants Ball AND Berry); wrongfully disallowing Plaintiff— *"to go out in the field"; "will need to go with a lead worker or supervisor…"* Defendant Hodson sent the email without Plaintiff's

---

[1] EEOC- Any employment action qualifies as "tangible" if it results in a significant change in employment status. For example, significantly changing an individual's duties in his/her existing job constitutes a tangible employment action regardless of whether the individual retains the same salary and benefits.

[2] Racial underpinnings to very verbiage.

knowledge AND intentionally excluded Plaintiff from the very email which Plaintiff

requested/was produced for Career Service discovery.

**65.)**    Defendant Hodson alleged Plaintiff as being incompetent to perform duties (e.g.

Safety Plan; Assess for Safety; write Report of Contact (ROC) Notes) to DHS Child

Welfare staff, supervisors, and ERT.

**66.)**    Defendants Hodson, Ball, Berry, Scheuermann, and Hall's false perjured

allegations of Plaintiff's inability to perform duties.

**67.)**    All involuntary administrative leaves and issued adverse actions to Plaintiff.

**68.)**    Defendant Davis escorted Plaintiff off DHS premise November 5, 2018 AND

December 13, 2018 to cause harm and humiliation.

## NEGATIVE PERFORMANCE REVIEW

**69.)**    November 30, 2018 12:33 PM Defendants Hodson and Ball prepared negative

performance review of Plaintiff when/while Plaintiff was placed on INVOLUNTARY

Administrative Leave.

   a.  The negative performance review had inclusion of false allegations by Defendants

   Ball, Berry, and Hodson from November 19, 2018 Notification of Contemplation

   of Disciplinary Action.

**70.)**    Plaintiff was wrongfully suspended the very same day Employee Performance

Review commentary was due (November 5, 2018).

## CLAIM TWO:        CONTINUOUS RETALIATION

Plaintiff alleges her second claim for relief herein by supporting facts/paragraphs below.

Plaintiff re-alleges ALL other claims/supporting facts paragraphs of herein Complaint at Law

AND filed formal complaint charges of discrimination [#541-2019-02097] against Defendants

with the Equal Employment Opportunity Commission (Attachment #1).

**SUPPORTING FACTS:**

**71.)**        **September 14, 2018:** Defendant Ball's unauthorized forwarding of Plaintiff's

"ERT Concerns" high importance subject headed email to Defendants Berry, Hodson,

and Davis wherein Ball explicitly requested — "*speed up the process*" — to effectuate

wrongful discipline of Plaintiff. Within very email Plaintiff raised concerns of time fraud;

discrimination and retaliatory reassignment of her duties by Defendants Hodson, Berry,

and VanCleave. Plaintiff also explicitly stated—"*I don't want to be subjected to any*

*more continuous retaliation nor told "I'm aggressive" for rightfully seeking to discuss*

*outstanding matters for fair/equal treatment or anticipation of receiving a lower*

*performance rating....I'm carbon copying parties (Davis and Ball) for hopeful*

*mediation; as I said before and I say again, I want to continue my work on ERT without*

*hostility or differential treatment.*"  Exhibits (#613-617 hand written in bottom right hand

corner) were produced to EEOC AND Career Service; but manifest abuse of discretion,

not in compliance with CSR §19-51(A-E), Plotkin erroneously denied evidence

for/during Career Service Hearings.

**72.)**        **September 26, 2018:** Oral Admonishment by Defendant Berry; wherein Berry

discriminatively calls Plaintiff "*liar!*" Berry has discriminatively called other Black Child

Welfare workers' at DHS "liars" — e.g. Alancia Gray f/a Unser; and Sherron Glapion

(both who testified as Case-In-Chief witnesses for Plaintiff before the Career Hearing;

and expressed fears of retaliation by Hodson, VanCleave, and Berry).

**73.)**        **November 5, 2018:** Plaintiff placed on 15 Calendar Day Unpaid SUSPENSION.

a. Allegations wherein Plaintiff whistle blew and printed/produced evidence of Defendant Hodson falsifying BC fatality information (Plaintiff's July 19, 2019 Safety Plan) in TRAILS— punishable by law C. R.S §18-8-144(1)(a); with discriminative malice to remove two surviving Black children from their home and discipline Plaintiff— under Defendant Berry's TRAILS user identification [18 U.S. Code §1030 (fraud and related activity in connection with computers); Executive Order 143 (the City's data protection policy)]; AND evidence of Defendant Hodson's time fraud approved by Defendant Berry.

b. Defendant's Case-In-Chief witnesses [Hodson, Berry] testified under sworn oaths before Career Service having no knowledge of DPD GO#2018-486927 Report's existence or findings; YET as Plaintiff proved in her whistleblowing, the TRAILS opening legal disclaimer explicitly states— *"You are attesting that the information is, true, to the best of your knowledge and you understand that falsifying this information is punishable by law 18-8-144(1)(a) C. R.S."* —AND Hodson on BOTH July 24, 2018 and July 25, 2018 under Berry's TRAILS user name/password — NOT "true to the best of her knowledge" **—falsely altered and entered verbiage of Plaintiff's TRAILS July 19, 2019 Safety Plan for the "BC Drowning"**— e.g. *"It was reported by **law enforcement** that her body had been floating in the pool for approximately one hour prior to being recovered by — (maternal great grandfather's first name)"*—; and *"—the surviving children— also reported being allowed in the pool unsupervised."* Rather than pleading the Fifth Amendment to her criminal activity; Defendant Hodson admitted before Career Service to changing verbiage of Plaintiff's TRAILS Safety Plan for reason

completely unworthy of credence— *"based on what you (Petitioner) told me in your (Petitioner) car."* [Hodson testimony April 18, 2019]. Hall [called as a "carious rebuttal" witness by Defendant on June 3, 2019] testified- "That a request for the police report would not have been done at that time (July 18, 2018); that while she (Hall) couldn't testify to exact reads (citation) of Volume VII (§7.104.32-Documentation- Report from Law Enforcement)- that the Department can decide to enter findings based on police reports; and that "she believes that it's good practice because people can have additional children down the road and then we (Child Welfare) have some record of that fatality and what happened." [Hall testimony].

c.  The DPD GO#2018-486927 Report is pertinent to a determination of all issues of three consolidated Career Service appeals identified in pages one and two of the Defendant Plotkin's July 12, 2019 Initial Decision affirming 15-Day suspension and affirming termination decision; along with Plaintiff's proffered affirmative defenses of discrimination, retaliation and whistleblowing. The BC fatality was the catalyst of **Plaintiff having "no previous disciplinary action in her personnel file"**[3] PRIOR to Defendant discriminately effectuating FOUR (4) paid investigatory administrative leaves'; 15-Day Suspension (beginning November 6, 2018); and Dismissal (December 7, 2018) all within very close temporal proximity of Plaintiff's protected activities (plural) and whistleblowing against DHS proposing (Hodson), recommending (Ball), directing (Berry), advising

---

[3] Career Service Hearing record, Plaintiff's testimony; and Ex. 1, pg.5, ¶2.

(Davis, ACA Packer and Catalano), and deciding/rubberstamping (Scheuermann) named responsible management officials (RMOs)..

d. The DPD GO#2018-486927 Report is of such substance and importance that consideration of the evidence could result in a different outcome of the case.

e. The United States Supreme Court has sanctioned the use of the "adverse inference rule," namely, that if the information had been provided, it would have been unfavorable to the Agency and favorable to the Petitioner. *See Insurance Corp. of Ireland v. Compayne Des Bauxites* 456 U.S. 694, 705 (1982), *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 350-1 (1909).

f. Arguably under the "adverse inference rule" the DPD GO#2018-486927 Report gives seriousness and showing of Defendant's Case-In-Chief witnesses not only intentionally making false entries in and falsely altering public record [violating CO Rev Stat §18-8-114 (1)] as it pertains to BC fatality [ex. Hodson's and Berry's false TRAILS entries pertaining to BC fatality matters]; false upheld [Cat's Paw Theory"- Scheuermann, Davis] disciplinary allegations about Plaintiff; but also committing perjury as public servants without penalization during Colorado Department of Labor and Employment [Davis, Hodson, Ball] and/or Career Service Hearings [Hodson, Berry, VanCleave, Schuermann, Ball, Davis] before Plotkin. For example, Scheuermann firmly gave PRETEXT testimony TWICE under cross examination— *"The concerns were that you (Plaintiff) let the children (surviving) leave the hospital without creating a Safety Plan!"* Berry's PRETEXT testimony under direct examination was extensive/reason for Berry being called twice to testify before Career Service.

g.  DPD GO#2018-486927 Report was INCOMPLETE during the course of Career

Service appeals'; AND release of police records and reports is governed by

the Colorado Criminal Justice Records Act, C.R.S. §24-72-301, *et seq.* where the

decision to release to the Plaintiff with certain information redacted as required by

law was not made by DPD Civil Liability until May, 2019 and was not

authorized/ signed for/ retrieved by a government identified proxy until AFTER

Career Service hearings' commenced. BC fatality at issue in herein civil suit,

Career Service appeals and petition WAS/IS under ONGOING investigation by

Colorado's Child Protection Ombudsman, as was made/requested by the Plaintiff

April 24, 2019, and is supportive of Plaintiff's CONTINUOUS protected

activity/whistleblowing claims. *Infra.*

h.  Further, as *pro se* Plaintiff asserted before the Career Service Board within her

Petition for Review— "When new material and evidence that were not considered

by the hearing officer become available, the agency cannot be said to have

considered the issue fully, nor can it be said with certainty that a complete record

will exist which fully presents the issue for judicial review." *Janssen v. Denver*

*Career Service Board and Denver Department of Aviation,* CO. CT. APP., No.

98CA0100.

i.  Plaintiff, *pro se*, diligently printed three hardcopies copies of the DPD GO#2018-

486927 Report and proffered for authentication, to complete the record,

impeachment, rebuttal, and discipline (termination) of Defendant's DHS Case-In-

Chief witnesses'/named Responsible Management Officials (RMOs) as sought

relief and at the earliest avail— CONTINUED third day of hearings on May 10,

2019. Abuse of discretion, continuous bias, and prejudice towards *pro se* Plainitff

— Defendant Plotkin denied.

**74.)**        **November 5, 2018:** Plaintiff placed on INVOLUNATARY Paid Administrative

Leave.

**75.)**        **November 26th to December 4, 2018:** Plaintiff placed on INVOLUNATARY

Paid Administrative Leave.

**76.)**        **November 27, 2018:** Plaintiff notified by Defendant Davis via phone that the

reason for Involuntary Paid Administrative Leave- "*It would be awkward to have her*

*(Plaintiff) return to the office.*"

**77.)**        **December 4, 2018 to December 7, 2018**: Plaintiff placed on INVOLUNATARY

Paid Administrative Leave.

**78.)**        **December 7, 2018:** Plaintiff placed on WRONGFUL DISCHARGE FROM

EMPLOYMENT.

**79.)**        ***EX PARTE* communications** between Defendants Hodson, Davis, Ball, Berry,

and VanCleave TO the Designated Deciding Official (DDO) of all adverse actions,

including reassignment of duties (e.g. BC fatality) — Defendant Scheuermann.

**80.)**        **April 18, 2019; April 19, 2019, May 10, 2019, June 3, 2019 AND June 4, 2019:**

Career Service Hearings.

**81.)**        **July 25, 2019:** *Pro se* Plaintiff filed Petition for Review with Career Service

Board.

     a.   Career Service Board has been languish; and contrary to its own Rule; has failed

        to provide a fair, efficient, and speedy administrative review of appeals from the

        Career Service Hearing Office — Defendant Plotkin.

**CLAIM THREE:**     **CONTINUOUS WHISTLEBLOWER RETALIATION**

Plaintiff alleges her third claim for relief herein by supporting facts/paragraphs below.

Plaintiff re-alleges ALL other claims/supporting facts paragraphs of herein Complaint at Law

AND filed formal complaint charges of discrimination [#541-2019-02097] against Defendants

with the Equal Employment Opportunity Commission (Attachment #1).

**SUPPORTING FACTS:**

82.)       Plaintiff had/has reasonable and good faith beliefs that the employment practices

she opposed regarding official misconduct by Defendants (Hodson, Berry, Ball,

VanCleave, Scheuermann, Hall, Davis, Packer, Catalano) constituting violations of (Title

VII of the Civil Rights Act of 1964); Colorado Employment Security Act C.R.S §8-73-

108(4); Attorneys Rules of Professional Conduct; CSR Article VII; Career Service Rule

§9-62 Protected Service Stipend; Colorado VOL VII §7.106.1 Egregious, Near Fatalities,

Child Fatalities [Eff. 1/1/15]; CSR <u>Fiscal Accountability Rule 10.1: Reporting Fiscal</u>

<u>Misconduct;</u> Colorado Revised Statutes §18-8-114(1)(a)[4]; 18 U.S. Code §1030 (Fraud

and related activity in connection with computers); Executive Order 143 (the City's data

protection policy); time/attendance fraud; and abuse of authority PRIOR to Agency's

adverse actions, which were substantial or motivating factors in TEMPORAL

PROXIMITY to establish causation for adverse actions.

**Dates/details of Plaintiff's whistleblowing against Defendants' (not inclusive):**

---

[4] CO Rev Stat §18-8-114 (1) A person commits a class 1 misdemeanor if: (a) The person knowingly makes a false
entry in or falsely alters any public record.

**83.)**        **October 18, 2017**— Plaintiff emailed notice about FLSA VIOLATION; Obey

now Grieve Later; AND fears of discipline to Defendant Hodson and carbon copied

Defendant Ball wherein Plaintiff explicitly states in-part— *"Being that ERT staff*

*are/have not been eligible for the 9-62 CSA Protective Service Stipend, I think perhaps*

*it's best that I raise any questions including when/if having to respond after prescribed*

*After Hour times in addition to regular shift duty schedule with/to the appropriate parties*

*in Human Resources;"* and *"Hope that your including her (Ball) wasn't to instill*

*discipline, fear, or create a paper trail. I understand and have never held issue with*

*obeying my supervisor's orders here at DDHS..."*

**84.)**        **November 7, 2017**—Plaintiff emailed Defendant Hodson about receiving

differential treatment for call taking and unwelcomed scrutiny.

**85.)**        **January, 2017**— Plaintiff complained to Defendants Ball about Defendant

VanCleave; there being a lack of ERT Supervisor working designated ERT staff hours;

and hostile work environment.

**86.)**        **April 1, 2017**— Plaintiff complained to Defendant Ball about hostile work

environment.

**87.)**        **April 3, 2017**— Plaintiff email replied to Defendant Ball NOT availing

experienced/adequate supervisor and administrative coverage for ERT NOR forcing

Defendant VanCleave to adjust her FLEX schedule for Wednesday call taking coverage

as was needed. Plaintiff's work load demands by Defendant Ball was more than all other

ERT staff.

**88.)** **July 24, 2018**— Plaintiff emailed DHS Child Welfare Administrator II Jennifer

Gruca AND Defendant Davis — about Defendant Hodson and Berry's time fraud and

nepotism; differential treatment; and Plaintiff requested to discuss concerns.

**89.)** **July 25, 2018**— Plaintiff met with Defendant Davis about Defendants' Hodson

and Berry's time fraud; nepotism; harassment; and Plaintiff's differential treatment…

**90.)** **August 15, 2018**—Plaintiff filed whistleblower complaint about Defendants

Hodson and Berry to the City and County of Denver's independent, third-party resource,

for employees to report suspected fraud or financial misconduct known as The Fraud

Hotline/Lighthouse Services. Case #1534351680.

**91.)** **August 22, 2018**— Plaintiff was the ONLY ERT staff subjected to weekly hostile

"supervisions" with Defendant Hodson. Plaintiff emailed concerns of Defendant Hodson

taking but NOT furnishing copies of her "*Supervision Notes*" (including for 8/16/18 AND

8/23/18) like the one Plaintiff signed on July 31, 2018.

   a. Email also evidences Plaintiff re-raising concerns during RECORDED December

   4, 2018 Contemplation of Discipline Meeting; Defendants Hodson and Davis's

   page 4 of November 19, 2018 Notification of Contemplation of Disciplinary

   Action UPHELD for Plaintiff's December 7, 2018 termination INCORRECTLY/

   INTENTIONALLY cites "*Supervision Notes*" as being an "Enclosure" BUT

   Defendant's Hodson, Davis, and Catalano NEVER produced "*Supervision Notes*"

   to Plaintiff until April 5, 2019 (AFTER Career Service Discovery ended).

   Plaintiff's objection to authenticity of Agency's Career Service Hearing Exhibit

   10 was also one Plaintiff raised as being FRAUD ON THE COURT.

**92.)**      **August 23, 2018**— Defendant Davis's "Individual Assessments of ERT";

wherein Plaintiff engaged in protected activity about Defendants Hodson, Berry, and Ball

to Davis.

    a.  Prior to assessing and investigating Plaintiff's mismanagement claims on August

        23, 2018 Defendant Davis sent Plaintiff August 23, 2018 Outlook email (which

        Davis later retracted/hid from Plaintiff and Plaintiff retrieved copy from Case-In-

        Chief witness Dawn Landrum) stating in-part — *"…do not share anything*

        *discussed in this interview or anything related to this assessment with anyone,*

        *including your supervisor or team mates, CW co-workers, or other employees of*

        *the City and County of Denver."*

    b.  Plaintiff produced copy of the August 23, 2018 Outlook email from Defendant

        Davis at the October 30, 2018 Contemplation of Discipline 15-Day suspension to

        Defendants Hodson, Ball, Berry, Davis, Schueremann (Bates stamped #337-338,

        under tab H); AND for CSR Hearings' H337-338.

    c.  Plaintiff's H337-338 was timely produced and testified by Plaintiff and Defendant

        Davis; but CONTRARY to applicable authority Career Service Rule §19-51(A)

        — ABUSIVELY denied by Defendant Plotkin. Exhibit proves Plaintiff's

        continuous whistleblowing and retaliation claims and Plaintiff's appeals wherein

        she argued precedential authority wherein Career Service Board ruled— *"When/if*

        *an agency tells an employee not to contact co-workers during investigation of*

        *his/her mismanagement claim, such agency action may be viewed as an indirect*

        *form of discipline or penalty within the broad scope of the whistleblower*

        *ordinance." In re Muller,* CSB 48-08, 2 (10/24/08).

93.)        **September 25, 2018**— "YOU OK" subject headed email from former DHS Lead

Social Caseworker Alisha Fluken to Plaintiff about Defendants' Berry and Hodson's

wrongful treatment of Plaintiff and September 26, 2018 disciplinary meeting which

Defendants Hodson AND Berry would re-discipline Plaintiff for and uphold within

December 7, 2018 adverse action of termination.

94.)        **October 15, 2018**— Plaintiff emailed Defendant Scheuermann high importance

"Request to meet to discuss ongoing hostile matters" email; specifically with Defendant's

Hodson and Berry.

95.)        **October 18, 2018**— Plaintiff disciplined by Defendants' Hodson AND Berry

with charge/specification within December 7, 2018 upheld termination.

96.)        **October 23, 2018**— Plaintiff was on approved sick PTO October 22, 2018 and

notified Defendant Hodson of inability to attend October 23, 2018 Intake Training (which

was NOT mandatory); yet ONLY Plaintiff was disciplined for NOT attending 10/23/18

Intake Training; and NO ONE FROM ERT attended as evidenced by Sign-In Sheets

Plaintiff obtained for Career Service discovery.

97.)        **October 27, 2018** — Plaintiff filed SECOND whistleblower complaint about

Defendants' Hodson and Berry to the City and County of Denver's independent, third-

party resource, for employees to report suspected fraud or financial misconduct —

boasted during Mayoral elections' by Defendant Hancock as— "The Fraud

Hotline/Lighthouse Services." Case #1540679421.

98.)        **October 30, 2018**— Plaintiff submits 21 pg. written response and gives 1 hour

RECORDED verbal response to Defendants Hodson, Ball, Berry, Davis, Scheuermann,

and Packer at Contemplation of Discipline (Suspension) wherein she places Defendants'

on notice of Title VII, Cat's Paw Theory, Retaliation, and her whistleblowing/EEO protected activities.

**99.)**     **November 5, 2018**— Plaintiff re-places Defendants' Davis AND Schueremann on notice of Title VII, Cat's Paw Theory, Retaliation, and her whistleblowing/EEO protected activities during meeting wherein Defendants' Davis AND Schueremann issued Plaintiff upheld SUSPENSION unpaid 15 calendar days.

**100.)**     **November 6, 2018**—Plaintiff makes EOC Inquiry online.

**101.)**     **November 7, 2018**— Plaintiff files Career Service Appeal Number 73-18 for continuous discrimination (race, color, sex, marital status); retaliation; and whistleblowing.

**102.)**     **November 27, 2018**— Plaintiff files Career Service Appeal Number 76-18 for continuous discrimination (race, color, sex, marital status); retaliation; and whistleblowing.

**103.)**     **December 4, 2018**— Plaintiff re-places Defendants Hodson, Ball, Berry, Davis, Scheuermann, and Catalano on notice of Title VII, Cat's Paw Theory, Retaliation, and her whistleblowing/EEO protected activities during 1 hour RECORDED response to Defendants' Contemplation of Discipline (TERMINATION).

**104.)**     **December 10, 2018**— Plaintiff files Career Service Appeal Number 80-18 for continuous discrimination (race, color, sex, marital status); retaliation; and whistleblowing.

**105.)**     **January 25, 2019**— Per Defendant Catalano's heightened wrongful allegations and misinformation that Plaintiff "intended to influence personnel matter" by "threatening to disclose confidential child welfare information to the public" and "criminally violate

C.R.S §19-1-307(1)" — Plaintiff replied via email to Defendant Smith several legal defenses; as follows— "*Case law and ethic codes forbid lawyers from threatening to present criminal charges solely to obtain an advantage in a civil matter; lawyers are not to coerce a civil remedy by threatening criminal accusations unrelated to the civil wrong: CO Rev Stat §18-8-114 (1) is one that Agency's Attorney(s) should have brought to the attention of named Responsible Management Officials (RMOs)...Appellant has been/is afforded SEVERAL legal protections under the First Amendment of the United States Constitution along with anti-discrimination and whistle blowing laws which Agency shall be wary of running afoul...Nothing through/by Agency threatening to present criminal charges analogous to C.R.S §19-1-307(1) prevents Appellant from speaking with the press about her appeals'. Neither does C.R.S §19-1-307(1) preclude Appellant from personally bringing matters (evidence of RMOs violating CO Rev Stat §18-8-114 (1) as it pertains to their child welfare records) to the investigated family's legal knowledge and attention. Also, the investigated family is afforded to report; call for investigation; and independently bring matters to legal and/or public attention. Although unfortunate that the Agency failed to resolve her employment claims expeditiously, at the lowest level (sought mediation) and the best interest of taxpayer; pro se Appellant is very confident that her THREE consolidated appeals with THREE accepted affirmative defenses of retaliation, discrimination, and whistle blowing hold merit and will not be quashed.*"

**106.)**     **February 11, 2019**— Unemployment Appeal Hearing [Docket 1341-2019; with testimony of Defendant Davis AND Plaintiff (Claimant)]. Defendant wrongfully denied Plaintiff unemployment benefits.

107.)    **March 29, 2019** — At 1500 recorded Career Service Hearing teleconference regarding Plaintiff's Motion to Compel, Sanctions, Witnesses (subpoenas) — Defendant Catalano verbally requested to WITHDRAW disciplinary charges CSR §16-28(T) AND (F) against Plaintiff. Defendant Plotkin's abusive discretion and bias disallowed withdraw of disciplinary charges CSR §16-28(T) AND (F) DESPITE Plaintiff correctly arguing and notating in her Career Service Prehearing Statement— *"Specific conduct supporting CSR §16-28(R) AND §16-28(T:1-3) violations in both the November 5, 2018 suspension [Ex. 3] and December 7, 2018 dismissal [Ex. 6] letters are NOT identified."*

108.)    **April 3, 2019**— Unemployment Appeal Hearing [Docket 1342-2019; with testimony of Defendants Hodson, AND Plaintiff (Claimant)].

109.)    **April 6, 2019**— Plaintiff blows whistle on Defendant Catalano FAILING to TIMELY submit Career Service hearing exhibits "absent showing of a good cause" no later than the deadline for the filing of prehearing statements" on April 4, 2019 and in accordance to Career Service Rule. Also, Plaintiff placed Defendant on notice of violating Attorneys Rules of Professional Conduct via email; when Defendant Catalano interrogated Plaintiff's Case-In-Chief witness (Sherron Glapion) about Career Service Hearing issues AFTER April 4, 2019 discovery ended.

110.)    **April 12, 2019**— 1:13 PM Plaintiff received carbon copy "RE: Meleaha Glapion Appeal Hearing + no retaliation" email from Sherron Glapion TO Defendants Catalano AND Ball. Evidence was printed and proffered by Plaintiff on April 18, 2019 [Preliminary testimony of Plaintiff], but erroneously denied by Defendant Plotkin who also denied SUBPEONAED witness testimony from Sherron Glapion for Petitioner's

Case-In-Chief affirmative defenses as it pertains to Defendants discrimination and retaliation.

111.)    **April 18, 2019**—Plaintiff's *pro se* three consolidated appeals numbers 73-18, 76-18, and 80-18 before Career Service Hearing Defendant Plotkin.[5]

112.)    **April 19, 2019**— Plaintiff's *pro se* CONTINUED three consolidated appeals numbers 73-18, 76-18, and 80-18 before Career Service Hearing Defendant Plotkin.

113.)    **April 23, 2019**— Unemployment Appeal Hearing [Docket 1342-2019; with testimony of Defendants Hodson, Ball, AND Plaintiff (*pro se* Claimant)].

114.)    **April 24, 2019**— Plaintiff filed complaint with independent, third-party, Colorado Child Protection Ombudsman on April 24, 2019; largely as it pertains to investigating Defendants Hodson and Berry falsifying her July 19, 2018 Safety Plan for the BC fatality (referred to as Copeland) which the Agency (DHS) issued adverse action to Plaintiff on November 5, 2018.

115.)    **May 8, 2019** — Plaintiff makes EEOC Inquiry online. ALSO, Unemployment Appeal Hearing [Docket 1342-2019; with testimony of Defendants Hodson, AND Plaintiff (Claimant), Sherron Glapion, and Dawn Landrum]. Defendant Catalano crossed Rules of Professional Conduct even further WHEN towards the close of Plaintiff's sworn rebuttal testimony, Defendant Catalano, discriminatively yelled at/to Plaintiff- "*You're a LIAR!*" Before Plaintiff objected, Colorado Department of Labor and Employment Hearing Officer J. Rieke, re-addressed Defendant Catalano's unprofessional conduct.

---

[5] Career Service Hearing date was discriminatively delayed per Defendant Hodson's purported unavailability due to her children being on Spring Break.

**116.)**      **May 10, 2019** — Plaintiff's *pro se* CONTINUED three consolidated appeals numbers 73-18, 76-18, and 80-18 before Career Service Hearing Defendant Plotkin.

**117.)**      **May 21, 2019—** Plaintiff personally "Requested a Private Meeting" with The Scheduling Team at the Office of Mayor Michael B. Hancock online; as Mayor Hancock was/is the Deacon of New Hope Baptist Church; where allegedly the July 18, 2018 BC fatality (Copeland) family worshiped/are members.  Plaintiff made it known that DHS and Defendants' purposely target, harass, and wrongfully remove Black children from their homes AND Black female Child Welfare Social Caseworkers; specifically evidenced by BC fatality, Plaintiff's appeals, and concerted discriminative retaliatory actions by white Defendants' Hodson, Ball, Berry, VanCleave, Hall, Scheuermann, Packer, Catalano, and Smith.

**118.)**      **June 3, 2019—** Plaintiff's *pro se* CONTINUED three consolidated appeals numbers 73-18, 76-18, and 80-18 before Career Service Hearing Defendant Plotkin.

**119.)**      **June 4, 2019—** Plaintiff's *pro se* CONTINUED three consolidated appeals numbers 73-18, 76-18, and 80-18 before Career Service Hearing Defendant Plotkin. Same day of general runoff election for Denver Mayor; wherein Plaintiff in her Career Service Hearing closing arguments specifically mentions her religion, race, color, marital, sex, AND  Lisa Calderon (a Black Latina who ran for Mayor that brought Title VII civil action against City and County of Denver and named Defendant Hancock for discrimination).

**120.)**      **June 6, 2019—** Plaintiff amends filed complaint with independent, third-party, Colorado Child Protection Ombudsman about Defendants' Hodson, Berry, VanCleave,

Hall, AND Scheuermann violating Colorado Vol. VII and Career Service Rules pursuant to BC fatality incident.

**121.)** **June 10, 2019**— Plaintiff timely files "RE: Notice of Appeal & Opportunity to File Additional Argument" to Industrial Claim Appeals Office as it pertains to Defendant Catalano's May 29, 2019 Appeal of Plaintiff *pro se* PREVAILING on Unemployment Benefits Appeal for Docket 1342-2019.

**122.)** **June 12, 2019** — Plaintiff filed signed Formal Complaint Charges of Discrimination against DHS. Case #541-2019-02097.

**123.)** **June 13, 2019**— Plaintiff emails BC fatality (Robert Copeland) family; Colorado Child Protection Ombudsman; DHS Ongoing Social Caseworker Tawanna French; and Defendant Smith with DHS Attorney Shaunda Frierson evidence of **Defendant Hodson falsifying BC fatality information in TRAILS punishable by law C. R.S §18-8-144(1)(a)**; with public photos of Defendants' Hodson, Berry, Ball, Scheuermann to later be released for press releases.

**124.)** **July 12, 2019**— Defendant Plotkin's Initial Decision emailed as it pertains to Plaintiff's three consolidated appeals numbers 73-18, 76-18, and 80-18.

**125.)** **July 16, 2019**— EEOC Formal Complaint Charges Intake Interview.

**126.)** **July 25, 2019** — Plaintiff timely files Petition for Review to Career Service Board under the following FOUR grounds: new evidence; erroneous interpretation of applicable authority; policy setting precedent; and insufficient evidence — pursuant to Career Service Rules [CSR] §21-21(A-D) AND Fed.R.Civ.P 56(C).

**127.)** **October 2, 2019**— Rescheduled September 12, 2019 Unemployment Appeal Hearing [Docket #34484-2019].

**CLAIM FOUR:       HARASSMENT/ HOSTILE WORK ENVIRONMENT** ·

Plaintiff alleges her fourth claim for relief herein by supporting facts/paragraphs below. Plaintiff re-alleges ALL other claims/supporting facts paragraphs of herein Complaint at Law AND filed formal complaint charges of discrimination [#541-2019-02097] against Defendants with the Equal Employment Opportunity Commission (Attachment #1).

**SUPPORTING FACTS (not inclusive):**

**128.)**      CONTINUOUSLY subjected to a hostile work environment, the date Plaintiff believed or had reason to believe that she was a victim of discrimination was <u>October 18, 2017.</u>

**129.)**      Defendant VanCleave (NOT of Plaintiff's protected groups and is white, divorced) was NOT disciplined for verbally and physically threatening Plaintiff AND TWO ERT Supervisors (Arthur Trass AND Kathryn Hodson).

**130.)**      Defendant VanCleave in front of ERT Social Caseworkers verbally on a Friday in January, 2017 yelled to ERT Supervisor Trass (Black male)- *"Fuck you Art, you're the worst supervisor ever! I fucking quit!"* VanCleave them slammed Trass's adjourning door into the ERT office space; then grabbed her laptop computer and stormed out of the office. VanCleave was NOT issued discipline.

**131.)**      Defendant VanCleave during May 2018 ERT Staff Meeting verbally yelled at Defendant Hodson— *"You're sitting there huffing and puffing like we're bitching at you Katie!"* VanCleave was NOT issued discipline.

**132.)**      DHS promoted and awarded Defendant VanCleave for deplorable; disruptive; and discriminative behaviors.

**133.)**    DHS failed to remove barriers/triggers— long standing history of grievances AND EEO complaints concerning racial targeting; harassment; glass ceilings; non-selection/non-promotions;  wrongful terminations and/or involuntary retirements of Black and African American female employees'; especially within DHS Child Welfare Division.

**134.)**    Defendant Hancock has been contacted SEVERAL times by present and former Black and African American female DHS employees' about illegal encountered and employed discrimination by ALL WHITE GROSS MISMANAGEMENT who refer to themselves as DHS "leadership".

**135.)**    Plaintiff was subjected to higher level of scrutiny than other employees AFTER she engaged in protected activities.

**136.)**    Defendant Homlar was abreast of all adverse actions issued to Plaintiff by Defendants' Hodson, Berry, Ball, and Scheuermann; as evidenced by him being carbon copied on all adverse actions. Homlar hired Defendants' Scheuermann and Berry.

**137.)**    Prior to Plaintiff being issued adverse actions, DHS Child Welfare Intake Supervisor Sherron Glapion emailed Defendant Hancock AND met with Defendants Davis; Scheuermann AND Mares about discriminative treatment of Black female Social Caseworkers in DHS Child Welfare and specifically about Defendant Berry's discriminative treatment.

   a. Bewildering is Defendant Mares response— *"You make it sound like there's a war going on down there!"* Plaintiff testified to Mare's statement during Career Service closing arguments.

   b. Defendant Scheuermann's sworn Career Service testimony on April 19, 2019

acknowledged that DDHS CW Intake Supervisor Sherron Glapion engaged in protected activity about Defendant Berry.

c. Sherron Glapion— was placed on immediate involuntary administrative leave July 23, 2019 until September 30, 2019— subsequent to hostile environment AND harassment— by herein Defendants Hodson, Berry, Ball, Scheuermann, Catalano, Davis, Homlar, and Mares— temporally proximal to having been Plaintiff's protected Case-In-Chief Witness before both tribunals of Colorado Department of Labor and Employment AND Career Service Hearing. Sherron Glapion had to succumb to hiring counsel and accepting demotion of title and pay to return to DHS.

**138.)**     October 23, 2018 11:02 AM text message from Defendant Hodson during Plaintiff's designated sleep hours/time off outside work schedule.

**139.)**     July 24, 2018 1:30-3:39 PM texts messages AFTER Plaintiff invoked "sick" earned PTO wherein Defendant Hodson wrongly threatened Plaintiff to be absent without leave (AWOL).


**CLAIM FIVE:**     **FAIR LABOR STANDARDS ACT VIOLATION**

Plaintiff alleges her fifth claim for relief herein by supporting facts/paragraphs below. Plaintiff re-alleges ALL other claims/supporting facts paragraphs of herein Complaint at Law AND filed formal complaint charges of discrimination [#541-2019-02097] against Defendants with the Equal Employment Opportunity Commission (Attachment #1).

**SUPPORTING FACTS:**

**140.)**     Defendant's violated City and County of Denver's Career Service Rule §9-62

Protected Service Stipend {Issued 1/11/2016}.

**141.)**     Plaintiff was coerced unrecorded compensatory time which she was disallowed to

use by Defendant Hodson.

**142.)**     Plaintiff was disallowed CSR Protected Service Stipend by Defendant Hodson AS

promised by Defendants' Hodson, Ball, AND Davis.

**143.)**     Plaintiff was NEVER issued pay differential for working 4PM-2AM AND 2PM-

12AM Monday-Thursday schedule AS promised by Defendants' Hodson, Ball, AND

Davis.

**144.)**     Plaintiff was ordered to work July 18, 2019 from 2:00 PM to 12:00 AM, followed

by 12:00 AM to 7:00 AM (call taking from home Afterhours); then ordered for a 9:00 to

10:00AM (teleconference); AND then ordered to physically report to DHS office by

12:00 PM (noon) AND work until 8:30 PM July 19, 2018 by Defendant Hodson. Plaintiff

was NOT afforded legal sleep time or PTO.

**CLAIM SIX:**          **CONSTITUTIONAL RIGHTS VIOLATION**

Plaintiff alleges her sixth claim for relief herein by supporting facts/paragraphs below.

Plaintiff re-alleges ALL other claims/supporting facts paragraphs of herein Complaint at Law

AND filed formal complaint charges of discrimination [#541-2019-02097] against Defendants

with the Equal Employment Opportunity Commission (Attachment #1).

**SUPPORTING FACTS:**

**_DUE PROCESS VIOLATIONS_**

**145.)** City and County of Denver's Career Service Rule (CSR) §16-10 (A): Service of Written Notice and Computation of Time **AND** CSR §16-46 (D): Contemplation of Discipline which explicitly set forth:

> "Written notices required to be served on an employee under this Rule 16 shall be served on the employee either in person with a certificate of hand delivery; by first class U.S. mail, with a certificate of mailing to the employee's last known address; or by e-mail if the employee requests service by e-mail in writing."

**AND**

> "Employees must be served with written notice seven (7) calendar days before the contemplation of discipline meeting. The seven (7) calendar day notice period starts on the day after the date shown on the certificate of hand delivery or mailing, or on the e-mail."

CONTRARY to aforementioned authorities—

   i. October 19, 2018 (Friday) Plaintiff was emailed pdf. "Notice of Contemplation of Disciplinary Action" by Defendant Davis.

   ii. October 23, 2018 Plaintiff explicitly requested via email to Defendants Davis AND Catalano to complete process service analogous to CSR §16-10 (A).

    iii.  November 27, 2018 (Tuesday) Plaintiff was emailed pdf "11/19/18 dated Notice of Contemplation of Disciplinary Action"; THEN November 28, 2018 first class certified U.S. postal mail of "11/19/18 Notice of Contemplation of Disciplinary Action" by Defendants' Hodson and Davis.

    iv.  December 4, 2018 Second Contemplation of Discipline Meeting NOT SEVEN (7) calendar days BEFORE written November 28, 2018 first class certified U.S. postal mailing of "11/19/18 Notice of Contemplation of Disciplinary Action" to Plaintiff by Defendants' Hodson, Ball, Berry, Davis, and Catalano.

**146.)**    Plaintiff's fundamental liberty rights were violated by Defendants' wrongfully tarnishing her reputation.

**147.)**    Plaintiff's fundamental property rights were violated on November 5, 2019 when Plaintiff had to surrender her identification badge; computer; iPad; iPhone; and was disallowed access to DHS property. Plaintiff lost lost training opportunities; Social Caseworker State Certification Expiration; and wages.

## *WEINGARTEN RIGHTS VIOLATIONS*

**148.)**    **September 26, 2018** — Plaintiff was orally admonished (discriminatively yelled at and called a "liar") by Defendant Berry which Defendant Davis was made aware of earlier by Berry.

**149.)**    Defendants Davis AND Hodson's Disciplinary Meeting about alleged nepotism of Plaintiff and DHS Child Welfare Intake Supervisor Sherron Glapion.

**150.)**    **August 23, 2018** — Assessment and investigation of Plaintiff's mismanagement claims by Defendant Davis.

**151.)**     **November 5, 2018**— Defendants Davis AND Scheuermann's issuance of

suspension meeting which Plaintiff received same day notice of via telephone only after

she arrived and set up for work.


**CLAIM SEVEN:     POST EMPLOYMENT RETALIATION**

Plaintiff alleges her seventh claim for relief herein by supporting facts/paragraphs below.

Plaintiff re-alleges ALL other claims/supporting facts paragraphs of herein Complaint at Law

AND filed formal complaint charges of discrimination [#541-2019-02097] against Defendants

with the Equal Employment Opportunity Commission (Attachment #1).

**SUPPORTING FACTS:**

***UNEMPLOYMENT BENEFITS DENIAL & APPEALS'***

**152.)**     Colorado Department of Labor and Employment Hearing Officer J. Rieke

Unemployment Appeal Hearing on February 11, 2019. Docket: 1341-2019.

   a.  Plaintiff denied unemployment benefits for November 5, 2018 15 Calendar Day

       Unpaid SUSPENSION.

   b.  Testimony given by Defendant Davis and Plaintiff.

**153.)**     Colorado Department of Labor and Employment Hearing Officer J. Rieke

Unemployment Appeal Hearings' on April 3, 2019; April 23, 2019; and May 8, 2019.

Docket 1342-2019.

   a.  Plaintiff *pro se* PREVAILED.

   b.  Pursuant to the Colorado Employment Security Act §8-73-108(4) C.R.S.;

       Plaintiff's entitlement to unemployment insurance benefits was/is legally

       warranted because – THROUGH NO FAULT OF HER OWN— the Agency

[City and County of Denver's Department of Human Services (DDHS) Child

Welfare Division (CW)] separated Plaintiff from working as a full-time salaried

Social Caseworker, on the Emergency Response Team (ERT), in the Child

Welfare Division, December 7, 2018.

c.  Defendant Catalano was "very confident" prevailing in Unemployment Appeal

Hearings; but as decided May 15, 2019, Plaintiff *PRO SE* PREVAILED.

Defendant Catalano has had "SEVERAL BITES AT THE APPLE", but obviously

can't accept defeat by a *in forma papurus, pro se* BLACK-American female

litigant; as further evidenced by Defendant Catalano's May 29, 2019 Appeal to

the Department of Labor and Employment Industrial Claim Appeals Office with

NO INITIAL ARGUMENT(S) . Arguably to the contrary, Defendant Catalano's

May 29, 2019 Appeal, gives further showing of the Agency's, through/by

Agent's, "Spoils System" continuous discriminative, retaliatory, whistle blower

animus towards Plaintiff. Thus, NEW assigned Docket #34484-2019 where

September 12, 2019 Unemployment Appeal Hearing was rescheduled to October

2, 2019 again to Plaintiff's detriment

**154.)     Defendants (Hodson, Berry) individually and in concert engage in illegal**

**actions that are designed to interfere with Plaintiff's prospects for employment.**

i.  Unjustified negative job references; refusing to provide job reference; and

informing Plaintiff's prospective employers about Plaintiff's protected

activities. Supportive dates include January 4, 2019; January 5-6th, 2019;

AND February 5, 2019 for Social Caseworker positions' which Plaintiff

applied for/at Boulder County; Adams County; and Douglass County.

155.)     **April 15, 2019** Plaintiff conferred via telephone from 1121-1203 with Defendant Catalano Registration Number 39773 (per Plotkin's April 12, 2019 Conferral and Stipulation Order); wherein Defendant Catalano became accusatory, offensive, and ran afoul of Attorneys Rules of Professional Conduct when she yelled to the Plaintiff— *"You're NOT a Lawyer!"*; *"You need to contact your witnesses; you haven't contacted your witnesses- IRENE!"*....Plaintiff calmly and collectively stated to Defendant Catalano that she wouldn't tolerate false accusations and that ordered conferral could be discontinued with a request to the CSA Hearing Office for a mediator. Unsurprisingly, SAME DAY, Plaintiff receives harassing emails from Defendant VanCleave per Defendant Catalano's instigation and forwarded emails to Career Service Hearing Office just hours before 8:30 AM first day of Hearings on April 18, 2019. Plaintiff placed Defendant VanCleave on notice to cease harassing communication or police would be contacted.

156.)     **July 12, 2019** Plotkin's Initial Decision affirming Agency's 15-day suspension AND termination contains erroneous findings of material facts; is based on an erroneous interpretation of statute or regulations or the erroneous application of the laws to the facts of the case; Plotkin's rulings during the course of the appeals and the Initial Decision were not consistent with required procedures AND involved manifest abuse of discretion; and the resulting error affected the outcome of the case. Unprejudiced Plotkin purposely denied Plaintiff's proffer of new material evidence (favorable to the Plaintiff; pertinent to determination of appeal issues) and legal argument that despite Plaintiff's reasonable diligence, could not have been discovered at the time of the hearings.

E.     **ADMINISTRATIVE PROCEDURES**

**157.)**    Plaintiff filed a charge of discrimination [#541-2019-02097] against Defendants

with the Equal Employment Opportunity Commission on June 12, 2019. *See* Attachment

#1. May 15, 2019 Decision wherein *Pro Se* Plaintiff PREVAILED at Colorado

Department of Labor and Employment Appeal Hearings [Docket 1342-2019] which were

held on April 3, 2019; April 23, 2019; and May 8, 2019— was/is enclosed with

Plaintiff's filed charge of discrimination against Defendants with the Equal Employment

Opportunity Commission. *See* Attachment #1 at Bates stamp #000239-000245.

**158.)**    Plaintiff received August 23, 2019 dated notice of right to sue from the Equal

Employment Opportunity Commission on September 3, 2019. *See* Attachment #2.


**F.    REQUEST FOR RELIEF**

**159.)**    Plaintiff requests full relief for past and future pecuniary compensatory damages

(with invocation of the collateral source rule); full relief for non-pecuniary compensatory

damages; back pay calculation of Social Caseworker with Afterhours pay as originally

promised; performed; and would have occupied if discrimination and retaliation had not

occurred; back pay and/or front pay to include any fringe benefits and other forms of

compensation or employment benefits to which Plaintiff would have been entitled had

there not been discrimination (ex. April 25, 2019 commenced almost five year anniversary

with DHS and would warrant pay increase and vestment); full catch-up contribution from

early withdrawal/ damages to Denver Employee Retirement Plan (DERP); award to

account for tax liability separately; restoration of all sick leave, leave without pay, annual,

and any time taken because of EEO complaint, Career Service appeals, encountered

discrimination, reprisal, mental/emotional anguish, loss of consortium, inconvenience;

other benefits of employment including equal and fair participation in DHS telework

(former compressed work schedule of Monday-Thursday) and Afterhours; enhanced

desired training opportunities; associated reasonable attorney consultations/fees, Career

Service discovery fees; any associated hearings' and court filing/serving costs, printing,

copying, computer/Internet usage time, mileage, postage, and witness fees'; amendment of

record (e.g. Performance Review to accurately account for duties with "Excellent" ratings

as Plaintiff would have received had there not been discrimination/retaliation); purge

records of negative information (ex. July 12, 2019 Initial Decision by Plotkin; all issued

adverse actions); reinstatement (not to preclude front pay and legal bumping of Defendant

VanCleave into ERT Lead Social Caseworker position and commensurate to anniversary

date); discipline (TERMINATION) of responsible DHS Defendants'; Plaintiff NOT to be

under the immediate or second line supervision of ANY named Defendant; permanent

injunction/enjoinment against Defendant from discriminative/retaliatory behavior/acts in

the future with imposition of penalties for "every person" that committed illegal prohibited

personnel practices; full notice/posting for all City and County of Denver employees that

unlawful employment practices took place at/by Defendant and will not be tolerated AT

ANY LEVEL; an apology letter from Mayor Hancock; OR

**160.)**     Defendants' pay Plaintiff appropriate settlement amount— the exact total of which

is **presently undetermined**— comprised of (1) the actual damages she has sustained;

aforementioned damages; and damages she will sustain in the future as a result of such

violations, economic and emotional, and (2) exemplary or punitive damages, as allowed

under law; including awarded costs of hearings' and suit, reasonable attorneys'

consultation and/or appointment fees and costs; interest on the above AND such other,

further and different relief as this Court deems just and proper.

**161.)**      Analogous to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a

TRIAL BY JURY for all issues so triable; as checked on October 1, 2019 filed Civil

Cover Sheet.

**G.      PLAINTIFF'S SIGNATURE**

**162.)**   .   I declare under penalty of perjury that I am the plaintiff in this action, that I have

read this complaint, and that the information in this complaint is true and correct. *See* 28

U.S.C. § 1746; 18 U.S.C. § 1621.

**163.)**      Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the

best of my knowledge, information, and belief that this complaint: (1) is not being

presented for an improper purpose, such as to harass, cause unnecessary delay, or

needlessly increase the cost of litigation; (2) is supported by existing law or by a

nonfrivolous argument for extending or modifying existing law; (3) the factual

contentions have evidentiary support or, if specifically so identified, will likely have

evidentiary support after a reasonable opportunity for further investigation or discovery;

and (4) the complaint otherwise complies with the requirements of Rule 11.

(Plaintiff's signature)

(Date)

(Form Revised December 2017)

JS 44 (Rev. 06/17)     District of Colorado

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Meleaha R. Glapion-Pressley | City and County of Denver et al |

**(b)** County of Residence of First Listed Plaintiff   Denver County, Colorado
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Denver County, Colorado
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question *(U.S. Government Not a Party)*

☒ 2  U.S. Government Defendant

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| | | | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☒ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from Another District *(specify)*

☐ 6  Multidistrict Litigation - Transfer

☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 U.S.C. § 1983; 42 U.S.C. § 2000e - 5;  28 U.S.C. §1331; 5 USC §551;

Brief description of cause:
Illegal employment discrimination; violations of constitutional rights.

☐ AP Docket

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   *Presently Undetermined*

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   10/1/2019

SIGNATURE OF ATTORNEY OF RECORD   *Meleaha R. Glapion*

**FOR OFFICE USE ONLY**

RECEIPT #   _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____